UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY HOFFMAN,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

No. 12-12648

District Judge Nancy G. Edmunds

Magistrate Judge R. Steven Whalen

**REPORT AND RECOMMENDATION**

Plaintiff Kimberly Hoffman brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #14] and that Plaintiff's Motion for Summary Judgment be DENIED [Docket #9].

**I.  PROCEDURAL HISTORY**

On June 3, 2008, Plaintiff applied for DIB and SSI, alleging disability as of May 1, 2003 (Tr. 144-154). Upon initial denial of the claim, Plaintiff requested an administrative hearing, held on December 6, 2010 in Flint, Michigan before Administrative Law Judge

("ALJ") Joanne Adamczyk (Tr. 30). Plaintiff, unrepresented, testified, (Tr. 38-59), as did vocational expert ("VE") Tim Shaner (Tr. 59-63). On February 24, 2011, ALJ Adamczyk found Plaintiff not disabled (Tr. 23-24). On May 11, 2012, the Appeals Council declined to review the administrative decision (Tr. 1-5). Plaintiff filed suit in this Court on June 18, 2012.

## II. BACKGROUND FACTS

Plaintiff, born January 3, 1969, was 42 at the time of the administrative decision (Tr. 24, 144). She completed high school (Tr. 185) and worked previously as a cleaner and receptionist/clerical worker (Tr. 181). She alleges disability as a result of bipolar disease, lupus, fibromyalgia, carpel tunnel syndrom ("CTS"), tendinitis, and scoliosis (Tr. 180).

### A. Plaintiff's Testimony

*The ALJ prefaced Plaintiff's testimony by noting that the date last insured ("DLI") was December 31, 2007* (Tr. 37). *Therefore, to be eligible for DIB under Title II of the Social Security Act, Plaintiff would be required to establish disability on or before that date* (Tr. 37).

Plaintiff offered the following testimony:

She currently lived in an apartment with her two children, ages five and seven (Tr. 38). She denied significant problems reading, writing, or performing calculations (Tr. 39). She supported herself and her children with public assistance, food stamps, and sporadic child support payments from her children's father (Tr. 39).

Plaintiff's last job before the 2003 onset of disability was performing clerical work in a dental office (Tr. 39-40). She admitted that she currently worked between four and eight hours a week as a cashier (Tr. 40). She wore wrist splints at night for symptoms of CTS but none of her treating sources recommended surgery (Tr. 40, 55). She held a valid driver's license and drove short distances (Tr. 41). She experienced difficulty performing self care and household activities (Tr. 41-42). She was able to grocery shop, but experienced anxiety in public places (Tr. 42). She denied current hobbies, church attendance, or computer use, but visited with a friend each morning for coffee when possible (Tr. 42-43). Her parents lived in the area and she visited them occasionally (Tr. 42). She smoked approximately a half a pack of cigarettes each day (Tr. 43).

On a typical day, Plaintiff arose at 6:30 a.m., prepared her children for school, then often reclined for the next two or three hours (Tr. 43-44, 49). She experienced joint stiffness upon arising a second time (Tr. 44). She denied performing stretching exercises but used a TENS unit three to four times a week to address mobility problems (Tr. 44). She did not use Vicodin every day, noting that she had not taken the pain medication in the last four days (Tr. 46-47). She currently took prescribed medicine for fibromyalgia and a bipolar disorder (Tr. 46). She also relieved body aches by taking hot showers (Tr. 48). Plaintiff had full custody of both children (Tr. 48).

Plaintiff estimated that she could walk for up to a half mile and sit or stand for about 20 minutes (Tr. 50). She experienced problems bending , kneeling, and crouching but did not use an ambulatory device (Tr. 51). She also experienced throbbing neck pain and "level

seven" right knee pain (Tr. 52). She denied physical therapy (Tr. 52). She experienced depression and anxiety and "all-year" allergies (Tr. 56).

Plaintiff denied problems interacting with friends or family but was distracted by workplace activity and crowds (Tr. 57). She did not experience substance abuse problems (Tr. 58). She denied agoraphobia (Tr. 58).

### B. Medical Records[1]

#### 1. Treating Sources

In June, 2006, Angie Sweeney, M.D. examined Plaintiff, noting joint stiffness and anxiety (Tr. 439). She referred Plaintiff to a rheumatologist for an evaluation of fibromyalgia symptoms (Tr. 439). In October, 2006, rheumatologist Ali A. Karrar, M.D. found the presence of fibromyalgia, recommending that Plaintiff exercise and continue the use of Elavil (Tr. 455). December, 2006 nerve conduction studies and an EMG of the lower extremities were negative for abnormalities (Tr. 351, 468). In February, 2007, Plaintiff's answers to a mood disorder questionnaire placed her in the "positive" category for depression (Tr. 343). The same month, nerve conduction studies of the upper extremities showed negative results on the left and "borderline abnormalities" on the right (Tr. 472). In September, 2007, Roger

---

[1] Treating records predating the February 14, 2007 denial of Plaintiff's prior disability claim are summarized for background purposes only (Tr. 14). Medical records pertaining to treatment unrelated to the disability claim have been reviewed but omitted from the present discussion.

-4-

S. Kilbourn, D.O. noted the current diagnoses of fibromyalgia and anxiety (Tr. 358). Plaintiff reported "some relief" from Wellbutrin (Tr. 435).

In January, 2008, Dr. Kilbourn refilled a Cymbalta prescription (Tr. 365, 425). Dr. Kilbourn's March, 2008 treating notes state that Plaintiff had recently been punched in the shoulder by her husband (Tr. 369, 421). Imaging studies of the shoulder and cervical spine were negative for abnormalities (Tr. 410). Imaging studies of the thoracic spine showed a mild scoliosis of the lower thoracic spine (Tr. 411, 452). Treating notes from May, 2008 state that Plaintiff experienced anxiety, fibromyalgia, and headaches and was currently taking Neurontin, Valium, and Vicodin (Tr. 415-416). In January, 2009, Dr. Kilbourn noted the diagnoses of hand pain, fibromyalgia, and bipolar disorder (Tr. 321). Plaintiff was advised to quit smoking (Tr. 322). In April, 2009, Plaintiff requested a refill of fibromyalgia medication (Tr. 303). In August, 2009, Dr. Kilbourn noted on a "return to work/school statement" that Plaintiff had been diagnosed with fibromyalgia (Tr. 305, 556). The same month, treating notes by Delinah Anderson, M.D. state that Plaintiff requested refills of prescriptions for bipolar and fibromyalgia (Tr. 580).

In January, 2010, treating notes by Dr. Anderson indicate that Plaintiff experienced muscular pain and that Neurontin was "not helping" (Tr. 325). March, 2010 treating notes by Dr. Anderson state that Plaintiff requested a "medical marijuana" card (Tr. 324). April, 2010 nerve conduction studies of the left lower extremity were unremarkable (Tr. 543). Dr. Larisa Bruma, M.D.'s progress notes state that Plaintiff reported decreased symptoms of fibromyalgia after taking Savella (Tr. 547). In May, 2010, Dr. Bruma recommended the use

-5-

of a TENS unit and wrist splints (Tr. 539). June, 2010 nerve conduction studies of the upper extremities show "very mild" nerve entrapment of the left mid palm and "mild" sensory entrapment of the right wrist (Tr. 538-539).

### 2. Non-Treating Sources

In March, 2007, Abdullah Raffee, M.D. examined Plaintiff on behalf of the SSA (Tr. 331-333). He observed that Plaintiff's gait and ability to move from chair to the examining table were unencumbered (Tr. 331). He noted mild weakness in the right hand (Tr. 332). The same month, Gordon R. Forrer conducted a psychological evaluation on behalf of the SSA, noting that while Plaintiff experienced personal unhappiness due to her husband's alcohol abuse, she was capable of "carrying out the activities of daily living and looking after her home adequately (Tr. 337). Dr. Forrer noted that Plaintiff stated that she had been fired from a job at a doctor's office after refusing to change her work shift (Tr. 335).

On July 17, 2008, psychologist Marianne Goergen performed a consultative examination on behalf of the SSA, noting Plaintiff's allegations of forgetfulness, isolation, and mood swings (Tr. 476). Plaintiff reported that she sought inpatient psychiatric treatment in 2000 because she believed she "'was losing her mind'" (Tr. 476). She admitted to marijuana use until quitting in April, 2008 (Tr. 477). Dr. Goergen noted that Plaintiff was well groomed with a slow gait and good self esteem (Tr. 477). Plaintiff reported being "angry and depressed" (Tr. 477). Dr. Goergen assigned Plaintiff a GAF of 58 with a "fair"

prognosis[2] (Tr. 478-479).

On July 29, 2008, Rom Kriauciunas, Ph.D. performed a non-examining Psychiatric Review Technique on behalf of the SSA, finding the presence of affective, anxiety-related, somatoform, and substance addiction disorders between May 2003 to the date of the evaluation (Tr. 271-281, 496-509). Under the "'B' Criteria," Dr.Kriauciunas found that Plaintiff experienced moderate limitations in social functioning and concentration, persistence, and pace (Tr. 281). However, in a second evaluation, Dr. Kriauciunas found that prior to December 31, 2007, Plaintiff's psychological conditions were non-severe[3] (Tr. 285-298, 482-495). The same day, Dr. Kriauciunas completed a Mental Residual Functional Capacity Assessment, finding that from May 1, 2003 to the present, Plaintiff was moderately limited in the ability to understand, remember, and carry out detailed instructions; maintain concentration for extended periods, interact appropriately with the general public, and respond appropriately to workplace changes (Tr. 299-200, 510-511). Dr. Kriauciunas found nonetheless that Plaintiff was capable of performing "simple, low-stress, unskilled work on a sustained basis" (Tr. 301, 512).

The following month, John Tofaute, M.D. examined Plaintiff on behalf of the SSA, noting Plaintiff's complaints of back pain due to scoliosis (Tr. 514). Plaintiff exhibited some

---

[2]

A GAF score of 51-60 indicates moderate symptoms OR moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 (*DSM-IV-TR*)(4th ed. 2000).

[3]To be eligible for DIB, Plaintiff would be required to establish disability before December 31, 2007 (*see* Tr. 37).

pareshesias in the right palm and volar aspect of the left thumb (Tr. 515). She demonstrated good grip strength and was able to perform fine manipulative functions in both hands (Tr. 516-517). Dr. Tofaute found that Plaintiff did not require a walking aid (Tr. 518). The same month, Kimberly Falor performed a Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 308, 522). Falor limited Plaintiff to occasional climbing balancing, stooping, kneeling, crouching, and crawling (Tr. 309, 523). She limited Plaintiff to frequent (as opposed to *constant*) bilateral reaching and handling (Tr. 310, 524). Falor found the absence of visual, communicative, or environmental limitations (Tr. 310-311, 524-525). In support of her conclusions, she cited Plaintiff's admissions that she could lift up to 15 pounds and walk one quarter of a mile (Tr. 312).

### 3.  Records Submitted After the February 24, 2011 Administrative Opinion[4]

---

[4]

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence

In January, 2009, Dr. Kilbourn refilled Vicodin, Xanax, and Trazadone prescriptions (673-675). Treating notes from August, 2010 state that Plaintiff did not "have work [schedule] yet" and was thus unable to make a gynecological appointment (Tr. 630). December, 2010 treating records show that Plaintiff requested Lyrica instead of Savella for fibromyalgia (Tr. 622). April, 2011 treating records state that Plaintiff received refills of Vicodin and Xanax (Tr. 613). In July, 2011, Dr. Almed composed a letter stating that Plaintiff was currently "unable to work due to multiple health conditions" (Tr. 666).

### C. Vocational Testimony

VE Tim Shaner classified Plaintiff's former work as an insurance clerk/receptionist

---

Six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Hence, this Court may consider the additional evidence only for purposes of determining whether remand is appropriate under the sixth sentence of § 405(g).

Even assuming that Plaintiff's *pro se* status at the administrative level satisfies the "good cause" requirement for considering the new evidence, she cannot show that it is material to the ALJ's non-disability finding. Most of the newly submitted records are copies of the material included in the original transcript or prescription slips for medication referenced in treating records reviewed by the ALJ and are thus not "new." The small number of non-duplicative records (1) pertain to conditions unrelated to the disability (2) restate Plaintiff's original diagnoses but do not shed new light on her alleged disabilities or, (3) refer to her condition subsequent to the February 24, 2011 decision. None of these records is likely to change the ALJ's original findings. *See Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711 (6th Cir. 1988)(To show that the newer evidence is material, Plaintiff "must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence").

as exertionally sedentary and semiskilled, and cleaner as light/unskilled[5] (Tr. 60, 270). The VE testified that Plaintiff possessed the transferrable skills of keyboarding and computer input, customer service, and records processing (Tr. 60). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work experience:

> [A]ssume a person . . . who is able to lift up to 10 pounds frequently and . . . less than than frequently; who would need a sit/stand option approximately once every . . . 45 to 60 minutes. . . who cannot climb ladders, ropes or scaffolds and can only occasionally climb ramps or stairs. . . .Who cannot kneel, crouch or crawl . . . . We want to avoid extremes of heat or cold, moving machinery and unprotected heights. Limited to simple, routine, repetitive tasks in an environment that is low stress, meaning, no decision making, no changes in the workplace, no need for negotiation or confrontations. Could such a person perform the claimant's past work or any other work that exists in the regional economy? (Tr. 61).

The VE responded that given the hypothetical limitations, the individual would be unable to perform Plaintiff's past relevant work but could perform the sedentary, unskilled work of a surveillance system monitor (400 positions in the regional economy); information clerk (2,500); and packager (2,100) (Tr. 62). The VE testified that if the individual were limited to frequent rather than constant manipulative activity, the job findings would remain

---

[5]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

unchanged (Tr. 62). The VE stated that if the same individual were also limited by Plaintiff's professed psychological and physical deficiencies, she would be unable to perform any work (Tr. 62).

### D. The ALJ's Decision

Citing the medical records, ALJ Adamczyk found the severe impairments of "fibromyalgia, an adjustment disorder with mixed anxiety, major depression, scoliosis and a substance use disorder" but found that none of the conditions met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 17). The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for sedentary work with the following additional restrictions:

> [The need to] change position by sitting or standing about every 45-60 minutes at a time; no climbing ladders, ropes or scaffolds; occasionally climbing stairs or ramps; no kneeling, crouching or crawling; avoid extreme temperatures of cold or heat, the need for a low stress environment for work and frequent but not constant use of her hands for repetitive tasks (Tr. 17).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform either of her former jobs, she could work as a surveillance monitor, information clerk, or packager (Tr. 23).

The ALJ discounted Plaintiff's allegations of disability, noting that despite the presence of a number of medically determinable impairments, Plaintiff was able to care for her school-age children, work one day a week, and visit with friends and family (Tr. 21-22). The ALJ also observed that symptoms of depression were stable with medication (Tr. 21).

### III. STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS[6]

### The Credibility Determination

---

[6] Any issue not raised directly by Plaintiff is deemed waived. *United States v. Campbell,* 279 F.3d 392, 401 (6th Cir.2002). Likewise issues raised "'in a perfunctory manner, unaccompanied by some effort at developed argumentation'"are deemed waived." *Clemente v. Vaslo,* 679 F.3d 482, 497 (6th Cir. 2012)(citing *Langley v. DaimlerChrysler Corp.,* 502 F.3d 475, 483 (6th Cir.2007)).

Plaintiff argues first that the ALJ erred by rejecting her claims of mental and physical limitation. *Plaintiff's Brief* at 6-16, *Docket #9* (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)). She contends that the ALJ ought to have credited her testimony of postural limitations (Tr. 41) and limitations as a result of depression and anxiety (Tr. 42, 56-58). *Id.* at 11. Plaintiff argues that the erroneous rejection of her claims also invalidates the VE's job findings which she contends were based on an incomplete hypothetical question. *Id.* at 10. She also cites Dr. Ahmed's July, 2011 opinion in support of her application for benefits. *Id.* at 13-15 (citing Tr. 666).

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *Duncan, supra,* 801 F.2d at 853. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment...that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Plaintiff does not contest the ALJ's finding that fibromyalgia, anxiety, and depression were severe impairments, but instead, seems to argue that the ALJ did not comply with the second prong of SSR 96-7p which directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."[7]

---

[7]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity

Contrary to Plaintiff's argument, the ALJ's reasons for rejecting Plaintiff's allegations of disability are well supported and thoroughly explained. He noted that in February, 2007, Plaintiff described herself as a "stay-at-home" parent to a treating source rather than disabled (Tr. 18). The ALJ noted that while Plaintiff was diagnosed with fibromyalgia, the records contained no evidence of "trigger point tenderness" used to identify the condition (Tr. 18). The ALJ found that Plaintiff's claims of postural limitations were undermined by Dr. Karrar's findings of a full range of motion and the ability to move from a chair to an examining table without difficulty (Tr. 19-20). The ALJ noted that despite the diagnoses of anxiety, depression, and fibromyalgia, Plaintiff was able to meet the needs of her school age children, stand through an eight-hour shift as a cashier, shop, visit friends, use a checkbook, and attend medical appointments (Tr. 21-22). Citing the treating records, the ALJ noted that symptoms of depression were well controlled with medication (Tr. 21). Because the credibility determination is well explained and well supported, the discretion generally allotted to the credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993); *See also Anderson v. Bowen* 868 F.2d

---

of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986))(An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record'"). For the same reason, Plaintiff's related argument that the ALJ erred by not including all of her professed limitations in the hypothetical question is unavailing. Having rejected Plaintiff's allegations, the ALJ was not obliged to include them in the hypothetical limitations posed to the VE. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994).

Plaintiff's additional argument that the Dr. Almed's July, 2011 opinion was entitled to the deference accorded a treating source does not provide grounds for remand under either the fourth or sixth sentence of 42 U.S.C. § 405(g). Dr. Ahmed's opinion, stating that "[a]t this time, [Plaintiff] is unable to work due to multiple health conditions," was written over four months after the ALJ's decision. The physician's four-sentence statement does not refer to Plaintiff's condition before the date of the ALJ's decision. As such, the July 11, 2011 opinion that she was unable to work is intrinsically irrelevant to whether she was disabled on or before the date of ALJ's decision (Tr. 666). *Sizemore, supra,* 865 F.2d at 712. If Plaintiff believes that records created after February 24, 2011 (either those before the Court or more recent evidence) support a disability finding, the proper remedy is to initiate a new claim for benefits.[8] *Id.*

---

[8]

Although Plaintiff's entitlement to DIB under Title II of the Social Security Act expired on December 31, 2007, she faces no such deadline for obtaining SSI benefits under Title XVI, provided that she can show disability and financial need. *Willis v. Sullivan,* 931 F.2d 390, 392, fn. 1 (6th Cir.1991); 42 U.S.C. § 1382.

In closing, it must be noted that the recommendation to uphold the Commissioner's decision on this application is not intended to trivialize Plaintiff's difficulties. However, substantial evidence supports the administrative decision. Because the ALJ's determination is easily within the "zone of choice" accorded to the fact-finder at the administrative hearing level it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

### VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the

opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 9, 2013          s/R. Steven Whalen
                                            R. STEVEN WHALEN
                                            UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on July 9, 2013, electronically and/or by. U.S mail.

                                              s/Michael Williams
                                              Relief Case Manager for the
                                              Honorbale R. Steven Whalen